UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JUAN ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-00561-SEB-KMB |
| | ) | |
| R. COCHRAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

This lawsuit is based on Juan Robinson's allegations that Officer Cochran violated his First and Eighth Amendment rights through a harassing strip search. There are no material factual disputes, and Officer Cochran is entitled to judgment as a matter of law. His summary judgment motion is granted, and this case is dismissed with prejudice.

**I. Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Indiana Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II. Facts

When reviewing a summary judgment motion, the Court assumes that the movant's factual assertions are true, if they are supported by admissible evidence, unless the movant contradicts them with admissible evidence of his own. S.D. Ind. L.R. 56-1(f)(1). The Court assumes that the nonmovant's assertions are true so long as they are supported by admissible evidence—regardless of whether the movant calls them into dispute. S.D. Ind. L.R. 56-1(f)(2).

Mr. Robinson's summary judgment response measures four pages and cites one piece of evidence: a declaration attached to the response. Dkts. 68, 68-1. Therefore, the Court considers his assertions only to the extent they are supported by his declaration—and, specifically, those portions of his declaration that do not contradict statements he made in his deposition. *James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020) (The Court disregards "an affidavit that contradicts a statement made

under penalty of perjury."). Mr. Robinson's one-page surreply includes only one citation to evidence—a declaration by a correctional officer. Dkt. 72 at 1. The Court therefore considers no other factual assertions made in the surreply.

With those limitations in mind, the parties' submissions tell the following story.

A.     **August 17 Strip Search**

On August 17, 2022, Officer Cochran and other staff members received an e-mail from staff member Cassidy Vandine. Dkt. 63-8. Her message reported that a confidential informant said that "Shit [was] about to go down over some dope" in Mr. Robinson's housing unit. *Id.* The informant stated that there were "at least a dozen weapons" in the unit and specified cells where weapons could be found. *Id.*

In response to that information, Lieutenant McKinney organized a team to search the specified cells. Dkt. 63-6 at ¶ 5. When they found weapons, they expanded the search to every cell in the unit. *Id.* at ¶¶ 9–10; dkt. 63-2 at ¶ 14. Officer Cochran was assigned to search Mr. Robinson's cell.[1] *Id.* at ¶ 15.

Prison procedure directed Officer Cochran and his colleagues to conduct their searches in the following fashion. First, strip search cell occupants while secured in a cell. Then, transport them to a separate, secure area, like a shower. Then, search the cell while the inmate is absent. Dkt. 24-1 at 20–23.

---

[1] Mr. Robinson does not directly contradict Officer Cochran's assertion that the entire unit was searched on August 17. Dkts. 68, 68-1. He testified in his deposition that his was the only cell searched on August 17. Dkt. 63-1 at 26:24–27:6, 31:11–15. However, he clarified that he was confined in a shower while his cell was searched and therefore unable to see what other cells were searched. *See id.* at 27:7–9, 32:13–33:13. And he has not offered other evidence establishing personal knowledge of what other cells were searched, *see* Fed. R. Evid. 602, or other evidence showing that no other cells were searched. Therefore, the Court treats Officer Cochran's assertion that the entire unit was searched as undisputed.

Prison procedure also directed a specific process for strip searches. Relevant to this case, the officer should direct the inmate to remove all clothing items on his own. Eventually, the officer must direct the inmate to "bend over and spread the buttocks for a visual inspection of the anal area for any protruding objects or other signs of contraband." *Id.* at 8–9.

Officer Cochran has no memory of searching Mr. Robinson on August 17. Dkt. 63-2 at ¶ 17. According to Mr. Robinson, Officer Cochran placed him and his cellmate in separate shower stalls, such that they could not see one another. Dkt. 63-1 at 32:13–33:13. Mr. Robinson removed his clothing without being instructed to do so. *Id.* at 33:14–18.

Officer Cochran searched Mr. Robinson's cellmate first. Dkt. 68-1 at ¶ 2. When it was Mr. Robinson's turn, Officer Cochran repeatedly called him "tough guy" and made statements like "Let me see your asshole" and "I want to see that asshole." *Id.* at ¶¶ 4, 6; dkt. 63-1 at 19:9–18, 24:15–24, 32:5–9. He made such remarks fewer than ten times. *Id.* at 34:23–25. The search ended when another officer old Officer Cochran to leave Mr. Robinson alone. *Id.* at 36:13–16.

Officer Cochran wore a "smirk" that Mr. Robinson interpreted as bullying. Dkt. 68-1 at 5. Officer Cochran did not use similar language or tone while searching Mr. Robinson's cellmate. *Id.* at ¶ 3. Mr. Robinson's search lasted longer than his cellmate's but was still "a normal amount of time for a strip-search." Dkt. 63-1 at 34:1–7, 35:25–36:11.

When Mr. Robinson returned to his cell, the search was complete. *Id.* at 37:22–24. He later received a conduct report, authored by Officer Cochran, informing him that a fan blade and a piece of sandpaper were confiscated from his cell. *Id.* at 37:25–38:20; dkt. 63-13.

**B.     Mr. Robinson's Complaints**

On August 23, 2022, Mr. Robinson submitted a complaint under the Prison Rape Elimination Act (PREA) concerning Officer Cochran's conduct during the August 17 strip search.

4

Dkt. 63-15. The recipient of the complaint notified Officer Cochran of the complaint and its contents. *Id.* On September 9, 2022, Mr. Robinson also submitted a grievance complaining about Officer Cochran's conduct during the August 17 strip search. Dkt. 63-1 at 38:23–39:24.

**C.**     **September 23 Search**

On September 23, 2022, an investigator directed Officer Cochran and another officer to investigate anonymous allegations from an inmate that Mr. Robinson had drugs and a knife in his cell. Dkt. 63-16. Officers Cochran and Pratt approached the cell, found it empty, and began their search. Dkt. 63-2 at ¶¶ 43–46. Mr. Robinson returned to the cell while the search was in progress. Dkt. 63-1 at 42:10–13. Officer Cochran read Mr. Robinson's papers during the search and destroyed some of them. *Id.* at 45:25–46:4.

Mr. Robinson asked to speak with a supervisor and was refused. *Id.* at 42:25–43:7. For five or ten minutes, Mr. Robinson waited outside the cell and watched the search. *Id.* at 43:22–44, 45:21–24. After five or ten minutes, Officer Cochran called a guard to place Mr. Robinson in restraints and take him to segregation. *Id.* at 43:13–21. Officer Cochran authored five conduct reports alleging that contraband was found during the search and that Mr. Robinson was disorderly and agitating other inmates while he waited for the search to be completed. Dkt. 63-19.

### III. Analysis

Mr. Robinson is pursuing an Eighth Amendment claim based on the August 17 strip search and a First Amendment retaliation claim based on the September 23 search. Even viewing the facts in the light most favorable to Mr. Robinson, Officer Cochran is entitled to summary judgment on both claims.

A.    **Eighth Amendment Claim**

"Strip-searching a prisoner violates the Eighth Amendment only if it is 'maliciously motivated, unrelated to institutional security, and hence totally without penological justification.'" *Jones v. Anderson*, 116 F.4th 669, 678 (7th Cir. 2024) (quoting *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004)). "To overcome summary judgment," the plaintiff must "produce evidence showing that the officers conducted the search in a harassing manner intended to 'humiliate and inflict psychological pain.'" *Id.*

"Searches are penologically justified when reasonably related to finding contraband that threatens the safety and security of the prison." *Chatman v. Gossett*, 766 F. App'x 362, 364 (7th Cir. 2019). "Abusiveness occurs when there is evidence of some palpable malevolence attributable to a prison official exacerbated by the lack of a justifiable penological objective for the search." *Del Raine v. Williford*, 32 F.3d 1024, 104 (7th Cir. 1994). Evidence that the plaintiff felt humiliated, without more, is insufficient to survive summary judgment. *Whitman*, 368 F.3d at 935.

The undisputed facts leave no doubt that the August 17 strip search was penologically justified. Mr. Robinson has not contradicted Officer Cochran's evidence showing that an informant reported a large quantity of weapons in Mr. Robinson's unit, that officers searched the entire unit, and weapons were found. Mr. Robinson also does not dispute that it was necessary to strip search him to safely search his cell. To the contrary, Mr. Robinson argues only that the manner in which Officer Cochran conducted the search was harassing and demeaning.

More pointedly, Mr. Robinson takes issue with only one aspect of the way Officer Cochran conducted the search: he smirked and made statements Mr. Robinson took as harassing. Mr. Robinson admits that the search took place in a non-public location, that its duration was normal for strip searches, and that Officer Cochran never touched him.

6

"Repugnant words . . . will seldom rise to an Eighth Amendment violation." *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019). "Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). Even the "use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution." *Id.* Likewise, smiling during a strip search is not enough, on its own, to violate the Eighth Amendment. *Chatman v. Gossett*, 766 F. App'x 362, 364 (7th Cir. 2019) ("Conklin's smile while he searched Chatman is not unconstitutional abuse.").

The only evidence left to support a finding that Officer Cochran intended to harass Mr. Robinson is Mr. Robinson's testimony that Officer Cochran called him "tough guy," repeatedly told him to show his asshole, and smiled while he did so. These actions strike the Court as closer to "unprofessional and deplorable," *DeWalt*, 224 F.3d at 612, than palpably malevolent, *Del Raine*, 32 F3d at 1040. Ultimately, however, that is a distinction the Court need not draw.

Officer Cochran asserts that he is entitled to summary judgment through qualified immunity. "[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

Once a defendant raises qualified immunity as a defense, the burden shifts to the plaintiff to defeat it by showing "two elements: first, that the facts show a violation of a constitutional right, and second, that the constitutional right was clearly established at the time of the alleged violation." *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019) (cleaned up). "'If either inquiry is answered in the negative, the defendant official' is protected by qualified immunity." *Koh v. Ustich*,

933 F.3d 836, 844 (7th Cir. 2019) (quoting *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (emphasis in original)).

This "clearly established" standard ensures "that officials can 'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Anderson v. Creighton,* 483 U.S. 635, 646 (1987)). To be "clearly established," a constitutional right "must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).

Given this emphasis on notice, clearly established law cannot be framed at a "high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Wesby*, 583 U.S. at 64 (quoting *Anderson*, 483 U.S. at 641). While "a case directly on point" is not required, "precedent must have placed the . . . constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up). Put slightly differently, a right is clearly established only if "every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). "The Supreme Court's message is unmistakable: Frame the constitutional right in terms granular enough to provide fair notice because qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Campbell v. Kallas*, 936 F.3d 536, 546 (7th Cir. 2019) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)).

Officer Cochran argues that, even if his smirk and his remarks technically violated the Eighth Amendment, they did not violate a clearly established right because every reasonable officer would not have known that smirking and using phrases like "tough guy" and "show me your asshole" make a strip search unconstitutional. Dkt. 65 at 27. This position is strongly

8

supported by *Lisle*, 933 F.3d at 719, *DeWalt*, 224 F.3d at 612, and *Chatman*, 766 F. App'x at 364, as noted above.

Mr. Robinson responds with a series of decisions that would not have put every reasonable officer in Officer Cochran's position on notice that his words and facial expressions violated the Eighth Amendment.

In *Mays v. Springborn*, 575 F.3d 643, 649–50 (7th Cir. 2009), the Seventh Circuit found sufficient evidence to support a finding that strip searches that included demeaning comments "were conducted in a harassing manner intended to humiliate and cause psychological pain," but that finding was based in part on factors not present here, including that the searches were conducted in large groups, in a cold room, and with dirty gloves.

*King v. McCarty*, 781 F.3d 889, 897–98 (7th Cir. 2015), is distinguishable on several fronts. The Seventh Circuit found that King adequately pled an Eighth Amendment claim by alleging that he was "transported in a see-through jumpsuit that left him exposed in front of other inmates as well as guards of both sexes." Although King alleged that staff members mocked him, that was one of many facts supporting an Eighth Amendment claim—not the only fact, as is the case here. Further, the Court in *King* found no penological purpose for the transparent jumpsuit, and Mr. Robinson's strip search had a clear penological purpose for the reasons set out above.

In *Calhoun v. DeTella*, 319 F.3d 936, 939–40 (7th Cir. 2003), the Seventh Circuit also found sufficient allegations to support an Eighth Amendment claim that "guards conducted the strip search in a manner designed to demean and humiliate Calhoun." Again, though, the allegations extended far beyond words and facial expressions:

> Calhoun alleges that the officers sexually harassed him through behavior unrelated to legitimate prison needs. In particular, he alleges that the guards made "ribald comments" and sexually explicit gestures during the search, and that they forced him to perform sexually provocative acts. Furthermore, he alleges that the female

9

>guards present during the search were neither mere passersby nor performing the legitimate penological function of conducting or monitoring the search; they were instead invited spectators.

*Id.* at 940. This case would not have informed a reasonable officer that smiling and making crude or even harassing comments alone could transform an otherwise acceptable strip search into a constitutional violation.

In *Peckham v. Wisconsin Dep't of Corrs.*, 141 F.3d 694, 697 (7th Cir. 1998), the Seventh Circuit found no Eighth Amendment violation at all. And this Court dismissed a strip search claim in *Ruby v. Floyd County Jail*, No. 4:24-cv-00002-SEB-KMB, 2024 WL 2112803, at *3 (S.D. Ind. May 10, 2024).

In short, Mr. Robinson has not demonstrated that Officer Cochran's conduct during the strip search violated a clearly established right. Officer Cochran is entitled to summary judgment on the Eighth Amendment claim.

**B.    First Amendment Claim**

To establish a prima face case for retaliation on summary judgment, a plaintiff must have evidence to support three elements. "First, he must show he engaged in protected First Amendment activity. Second, he must show an adverse action was taken against him. Third, he must show his protected conduct was at least a motivating factor of the adverse action." *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020).

The "motivating factor" requirement "amounts to a causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). "Suspicious timing alone will rarely be sufficient to create a triable issue" on the motivating factor element, especially where an alternative motive exists. *Id.*  To establish that retaliatory animus was a motivating factor behind the defendant's action, the plaintiff must show, at a minimum, that the defendants were aware of the plaintiff's protected activity. *See, e.g.*, *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir.

10

2018) (affirming grant of summary judgment when inmate presented only "vague and confusing testimony that [the inmate], at some point, named [the defendant] in a grievance" but "no evidence about what the grievance said or whether [the defendant] even saw or knew about it").

When a plaintiff proves a protected activity, an adverse action, and causation by a preponderance of the evidence, "the burden shifts to the defendant to rebut the claim, that the activity would have occurred regardless of the protected activity." *Manuel*, 966 F.3d at 680. If the defendant rebuts the claim, the plaintiff must demonstrate that "the proffered reason is pretextual or dishonest." *Id. See also* 7th Cir. Civ. Pattern Jury Instr. 6.03 (Once prima facie case is established, defendant must prove alternative causation by preponderance.).

Officer Cochran argues that he is entitled to summary judgment because, assuming Mr. Robinson can establish a prima facie case of retaliation, the undisputed evidence demonstrates that the September 23 search would have occurred regardless of his protected First Amendment activities. Dkt. 65 at 25–26. The record supports Officer Cochran's rebuttal, and Mr. Robinson has not offered a reason to find that it is pretextual or dishonest.

There is no dispute that the September 23 search took place after Mr. Robinson submitted a complaint about Officer Cochran's conduct during the August 17 strip search or that Officer Cochran knew about that complaint. There is also no dispute, however, that the September 23 search took place immediately after officers were informed that Mr. Robinson had drugs and a knife in his cell. Officer Cochran contends that this information required a search of Mr. Robinson's cell, regardless of his expressive activities or Officer Cochran's prior dealings with him. This argument is supported by testimony from Officer Cochran's supervisor that he determined the search was necessary upon receiving the information, then assigned Officer Cochran to the task. Dkt. 63-4 at ¶¶ 13–14.

11

In other words, the search would have taken place even without Mr. Robinson's protected expression.

Mr. Robinson did not address the First Amendment claim at all in his summary judgment response. Dkt. 68. In his supplemental response, Mr. Robinson argues only that Officer Cochran was aware of his protected expressions and that the search followed them quickly enough to support a finding that the expressive activity motivated the search. Dkt. 72 at 1–2. This is true, but it is the foundation of Mr. Robinson's prima facie case. Because Officer Cochran responded with a showing that the search would have occurred regardless, Mr. Robinson can only avoid summary judgment by demonstrating that the nonretaliatory justification was untruthful or pretextual, and he has not done so.[2]

### IV. Conclusion

Officer Cochran's motion for summary judgment, dkt. [63], is **granted**. This action is **dismissed with prejudice** pursuant to this order and the screening order, dkt. 31. The **clerk is directed** to enter **final judgment**.

**IT IS SO ORDERED.**

Date:     7/28/2025

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[2] Mr. Robinson also has not attempted to argue, for example, that *a* search was necessary because of the reports of contraband in his cell, but Officer Cochran's *conduct* during the search—including destroying papers and initiating false disciplinary charges—was not justifiable on any nonretaliatory basis. The Court will not make that argument for him. *See United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) ("[P]erfunctory and undeveloped arguments . . . are waived.") (internal quotations omitted).

Distribution:

JUAN ROBINSON
119967
PENDLETON – CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Benjamin Cardwell
benjamin.cardwell@atg.in.gov

Thomas Pratt
Office of Indiana Attorney General
Thomas.Pratt@atg.in.gov